695 F.2d 352
 30 Empl. Prac. Dec. P 33,256
 Robert L. PEKARSKY and Arnie J. Koch, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
George R. ARIYOSHI, individually and in his capacity as
Governor, State of Hawaii; Wayne Minami, individually and
in his capacity as Director of Regulatory Agencies, State of
Hawaii; Herbert Chun, individually and in his capacity as
Executive Secretary for the Board of Dental Examiners,
Department of Regulatory Agencies, State of Hawaii,
Defendants-Appellants,
and
Edward G. Maehara, etc., et al., Defendants.
 No. 81-4077.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1982.
Decided Dec. 21, 1982.
 
 Melvin Y. Nishimoto, Honolulu, Hawaii, for defendants-appellants.
 Stanley E. Levin, Honolulu, Hawaii, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHOY, PREGERSON and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Appellants Ariyoshi, Minami and Chun ("Appellants") appeal from the district court's order awarding attorneys' fees and costs against the State of Hawaii under the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. Sec. 1988. We reverse and remand for further proceedings.
 
 
 2
 Appellees brought the underlying class action civil rights suit on behalf of all Caucasians and new or non-residents of Hawaii who had failed to pass the Hawaii State dental licensure examinations between 1974 and 1979. Named as defendants in both their individual and official capacities were the eight members of the Dental Board of Examiners ("Dental Board defendants") and the Appellants, who were charged with discrimination against members of the class in the administration of the examinations.
 
 
 3
 The parties eventually entered into a Stipulation and Agreement of Settlement ("Agreement") which provided for the payment of damages by the Dental Board defendants, the modification of examination procedures, and expungement by the State of the records of class members who had failed past examinations. The Agreement also dismissed with prejudice the eight Dental Board defendants and reserved for later hearing the appellees' request for attorneys' fees against the three Appellants.
 
 
 4
 After the settlement was approved by the court, appellees moved under 42 U.S.C. Sec. 1988 for an award of attorneys' fees against the Appellants. The court found that the Agreement had dismissed the Dental Board defendants in their individual capacities only, thus leaving open appellees' claim for attorneys' fees against all defendants--Appellants and Dental Board members--in their official capacities. The court then awarded fees against all defendants in their official capacities, which award was held to be the liability of the State under Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).
 
 
 5
 Appellants contend on appeal that, contrary to the district court's finding, the effect of the Agreement was to dismiss the Dental Board defendants in both their individual and official capacities, leaving open appellees' claim for attorneys' fees only against the three Appellants. The latter now argue that, because appellees did not prevail against them, attorneys' fees against them were not justified. Further, they argue that, even if appellees did prevail against them, the fees awarded were clearly excessive.
 
 
 6
 We conclude that the district court erred in finding that the Agreement left open appellees' claim for attorneys' fees against the dismissed Dental Board defendants in their official capacities. The interpretation of a settlement agreement, like that of a contract, is a question of law subject to de novo review by this court. Kittitas Reclamation District v. Sunnyside Valley Irrigation District, 626 F.2d 95, 98 (9th Cir.1980).[1] In our view, the Agreement here is unambiguous and must be construed as having dismissed the Dental Board defendants in both individual and official capacities, and as having left open appellees' claim for attorneys' fees only against Appellants.
 
 
 7
 The relevant paragraphs of the Agreement read as follows:
 
 
 8
 12. There will be dismissal, with prejudice, as to defendants Maehara, Minato, Kurashima, Yang, Shindo, Kahoe, Hirano, and Au [Dental Board defendants] following approval by the Court of the settlement.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 16. The matter of plaintiffs' attorneys' fee request against Defendants Ariyoshi, Minami and Chun [Appellants] is reserved for hearing thereon separately on December 1, 1980 by the Court.
 
 
 12
 The dismissal of the Dental Board defendants in paragraph 12 is in no way limited to dismissal in their individual capacities. The defendants were sued in their dual capacities, and reference to them by name only, without specifying one capacity or the other, is most reasonably construed as reference to both capacities. Furthermore, paragraph 16 reserves appellees' request for attorneys' fees against Appellants Ariyoshi, Minami and Chun only. Had the Dental Board defendants been dismissed only in their individual capacities, paragraph 16 would logically have reserved for future determination the attorneys' fees question against such defendants in their official capacities. As to the Dental Board defendants, in both their individual and official capacities, we therefore conclude that the overall settlement figure included an attorneys' fees component.
 
 
 13
 We next conclude that appellees did prevail against the three Appellants, thus justifying an award of attorneys' fees against them as well.[2] The expungement of records and the reform of the examination procedures required by the Agreement represent relief obtained against Appellants. The implementation of these reforms will require the adoption by the Dental Board of new rules, which, to be valid, must be approved by Appellant Ariyoshi as Governor. See H.R.S. Sec. 91-3(c); Otani v. Contractors License Board, et al., 51 Haw. 673, 466 P.2d 1009, 1011 (1970). We are unpersuaded by Appellants' argument that the reforms will not require the adoption of "rules" within the meaning of H.R.S. Sec. 91-3(c). The reforms will apply generally to and affect all future dental license applicants, and will involve the implementation of a new policy of examination procedures. Their implementation will therefore require agency statements falling squarely within the definition of "rule." See H.R.S. Sec. 91-1(4).
 
 
 14
 While we thus conclude that attorneys' fees could be awarded against Appellants Ariyoshi, Minami and Chun, we must remand to the district court for recalculation of the amount of such award. The district court's award covered attorneys' fees incurred by appellees in prevailing against both the Appellants and Dental Board defendants. The Agreement, however, preserved only their claim for fees against Appellants. It was therefore improper to include in the award those fees attributable to work performed in prevailing against the Dental Board defendants, since the settlement paid by the Dental Board defendants included such fees. On remand, therefore, the district court should determine and award only such additional attorney's fees attributable to work performed in prevailing against Appellants.[3]
 
 
 15
 The order awarding attorneys' fees is REVERSED and the case REMANDED for further proceedings consistent herewith.
 
 
 16
 CHOY, Circuit Judge, concurring in part and dissenting in part:
 
 
 17
 I concur fully in that portion of the majority opinion which concludes that the settlement agreement entered into by the parties did not leave open appellees' claim for attorneys' fees against the dismissed Dental Board defendants.
 
 
 18
 However, I disagree with my Brothers Pregerson and Poole that attorneys' fees may be awarded against appellants Ariyoshi, Minami, and Chun under the peculiar circumstances attending this case. I hold no brief with the conclusion of the majority that appellees in achieving the settlement did technically prevail against these three appellants in two respects--effecting expungement of certain records and reformation of dental examination procedures. But I strongly feel that the award of any attorneys' fees would work an injustice here. See Aho v. Clark, 608 F.2d 365, 367 (9th Cir.1979).
 
 
 19
 Section 1988, 42 U.S.C., authorizes the district court in its discretion to award reasonable attorneys' fees to a prevailing party in a civil rights suit. In exercising its discretion, the district court is guided by the standard that a prevailing civil rights plaintiff should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust. Aho v. Clark, 608 F.2d at 367; see Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). In my view, the results of recent dental examinations which show the appellees' allegations of discrimination to be without merit constitute a special circumstance rendering any award of attorneys' fees against appellants unjust.
 
 
 20
 Appellees, who had repeatedly failed the Hawaii State dental licensure examination,[1] brought a class action suit charging the Dental Board of Examiners and appellants with discriminating in favor of Asian Americans and long-term Hawaii residents and against a class of Caucasians and new or non-residents in conducting the dental licensure examinations. Appellees' suit was based on the inferences drawn from two observations: (1) the Dental Board defendants and appellants were predominantly long-term residents of Asian ancestry and (2) the percentage of Asian Americans and long-term residents who passed the dental licensure examination was substantially greater than the percentage of Caucasians and new or non-residents who passed. Before any trial on the merits, the parties entered into a settlement agreement which provided for the payment of $325,000 by the Dental Board defendants, the expungement of records showing the failure of class members on prior examinations, and the modification of examination procedures to require anonymous grading. The settlement agreement also provided that a record be kept of subsequent examination results showing the total number of applicants who passed and failed, and the racial and residential composition of the successful and unsuccessful applicants.
 
 
 21
 The results of the three dental examinations held after the anonymous grading procedures were instituted convincingly rebut appellees' claims of discrimination. The results show that Asian Americans and long-term residents are still passing the dental licensure examination at rates significantly higher than Caucasians and new or non-residents.[2] In fact, the differential in pass rates between the groups has generally increased since the anonymous grading procedures have been used.[3]
 
 
 22
 The record also contains a comprehensive statistical study comparing the results of the first anonymously graded examination with results of earlier examinations. The study, performed by appellants' expert, Dr. Donald E. Wise, concludes that the data clearly do not support appellees' claims that Caucasians and new or non-residents were discriminated against in previous dental examinations. Significantly, the study reveals that the differential in pass rates between Asian Americans and Caucasians and between long-term residents and new or non-residents that exists in Hawaii is remarkably similar to that found in other states.[4] The study also offers several plausible, non-discriminatory reasons for the differentials, including the possible greater motivation of Asian Americans to succeed,[5] and the possibility that non-residents on vacation are taking the examination without studying merely to qualify for a tax deduction. Dr. Wise states that data from subsequent examinations do nothing to alter his conclusions.
 
 
 23
 The district court had before it the results of the recent dental licensure examinations and the statistical study performed by Dr. Wise when it considered appellees' application for attorneys' fees. While acknowledging that the recent examination results tend to show that no discrimination against Caucasians and new or non-residents had actually occurred, the district court nevertheless granted appellees' application and awarded attorneys' fees against appellants. Since I believe that the evidence showing the absence of discrimination undeniably constitutes a special circumstance rendering the award of attorneys' fees unjust, I cannot escape the conclusion that the district court's award of such fees was an abuse of discretion.
 
 
 24
 The majority in their footnote 2 charges that I am improperly using the examination results, "creat[ing] history" as they term it, because the examination results do not constitute the "operative facts" of this case. I am at a loss to understand the majority's charge or the reasoning behind it. The examination results are part of the record on this appeal, having been argued to the district court by appellants, considered by the district judge, and specifically referred to by him in his written decision.[6] Moreover, while the examination results were not part of the case in chief on which the settlement was based, they clearly bear upon the equitable factors which a district court must consider in exercising its discretion to grant or deny attorneys' fees. In exercising its discretion, the district court is bound by the standard that attorneys' fees should not be awarded if special circumstances would render the award unjust. Aho v. Clark, 608 F.2d at 367. The examination results, which persuasively show that appellees' suit was without merit, is highly relevant to whether special circumstances in this case exist. Being part of the record and important to the district court's equitable determination, those results are certainly operative facts of this case and are properly considered in reviewing the district court's decision.
 
 
 25
 The majority's charge leads me to believe that they are laboring under the mistaken impression that once a plaintiff is found to have prevailed, the grant of attorneys' fees automatically follows. Because of this error, they assume that evidence not relevant to whether a plaintiff has prevailed is a fortiori not relevant to the grant or denial of attorneys' fees and should not be considered. This approach is clearly improper. The legal standard is that a prevailing plaintiff should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust. Id. This standard clearly contemplates that evidence, such as the examination results, which is unrelated to whether a plaintiff has prevailed may still be highly relevant to the question of attorneys' fees.
 
 
 26
 The flaw in the majority's understanding of the law leaves me troubled in that their decision to affirm the award of attorneys' fees against appellants Ariyoshi, Minami, and Chun is based on an erroneous legal premise. It is one thing for the majority to have considered the examination results, and in exercising their judgment to disagree with me that the results compel denial of attorneys' fees.[7] It is of more serious concern that the majority, relying on an erroneous premise, ignored the examination results and thus affirmed the grant of attorneys' fees without considering this crucial factual evidence.
 
 
 27
 Congress' purpose in authorizing the award of attorneys' fees under Sec. 1988 was to remove the financial impediments that might otherwise hinder a private citizen from asserting his or her civil rights. S.Rep. No. 1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5910. It certainly was not to encourage private citizens to bring unmeritorious civil rights suits. The majority's approval of the award of attorneys' fees against appellants, however, disturbingly moves toward this result.
 
 
 28
 The recent examination results dispel any hint of discrimination and demonstrate that appellees' class action suit was in fact baseless. The very foundation for an attorneys' fee award has thus been swept away.[8] Appellees have already received a windfall of $325,000 as a result of the damages paid by the Dental Board defendants under the settlement agreement. We should not compound the inequity by heaping the cost of attorneys' fees onto their winnings--a cost that will be payable by the State and thus ultimately and unfairly borne by its taxpayers.
 
 
 
 [1]
 Appellees argue that the district court's interpretation was not confined to the four corners of the Agreement, but was based on the court's independent knowledge of the parties' intent. According to appellees, the court gained this knowledge through its close and extensive involvement in the settlement negotiations between the parties. Appellees further argue that, because the court's interpretation was thus based on extrinsic evidence of intent, it should be reviewed under the clearly erroneous standard
 We have reviewed the full record on appeal, including the transcript of the hearing on attorneys' fees, and have found no indication that the district court based its interpretation on anything other than the Agreement itself. The court made no findings of extrinsic fact with respect to the intent of the parties, nor did it state that it was relying on knowledge gained through its involvement in the settlement process. We cannot assume that the court's interpretation was based on undisclosed extrinsic evidence. Such evidence, if it existed, would properly have been set forth in the record in the form of findings of fact.
 
 
 [2]
 Judge Choy in dissent concedes that the appellees did (he states "technically") prevail, but argues that the award of attorneys' fees nevertheless would be unjust. In support of this conclusion, the dissent incorporates materials referring to dental examination results achieved after appellants, under the compulsion of this civil rights lawsuit, changed the general examination procedures. The dissent extrapolates from these results, which do not constitute the operative facts of this case, that inferences of discrimination have disappeared. This novel approach would seem to create history, a rationale which judicial philosophy does not normally accept
 
 
 [3]
 Appellants' argument that the fee award was excessive is based solely on the contention that the fees requested by appellees were not verified by the materials submitted to the court. Since we remand for determination of the proper amount of fees we need not further address this issue
 
 
 [1]
 Appellee Pekarsky failed the Hawaii State dental examination in August 1974 and again in February 1975 and apparently is still not presently licensed. Appellee Koch failed the examination in August 1975, February 1976, and August 1976. He subsequently passed the examination and is licensed to practice dentistry in Hawaii
 
 
 [2]
 The results of the three dental examinations held after the anonymous grading procedures were instituted are as follows:
 AUGUST 1979 EXAMINATION
 -----------------------
 EXAMINED PASSED FAILED % PASSED
 -------- ------ ------ --------
ASIAN AMERICANS 19 15 4 78.9
CAUCASIANS 31 7 24 22.6
OLD RESIDENTS 23 17 6 73.9
NEW OR NON-RESIDENTS 27 6 21 22.2
 FEBRUARY 1980 EXAMINATION
 -------------------------
 EXAMINED PASSED FAILED % PASSED
 -------- ------ ------ --------
ASIAN AMERICANS 9 7 2 77.7
CAUCASIANS 17 4 13 23.5
OLD RESIDENTS 9 7 2 77.7
NEW OR NON-RESIDENTS 17 4 13 23.5
 AUGUST 1980 EXAMINATION
 -----------------------
 EXAMINED PASSED FAILED % PASSED
 -------- ------ ------ --------
ASIAN AMERICANS 21 18 3 85.7
CAUCASIANS 22 7 15 31.8
OLD RESIDENTS 19 15 4 78.9
NEW OR NON-RESIDENTS 24 10 14 41.7
 
 
 [3]
 If the Dental Board defendants and the appellants had been practicing discrimination, the anonymous grading procedures would be expected to reduce substantially the differential in pass rates between the groups. This has not occurred. The data show that the relative pass rates of Caucasians and new or non-residents has worsened, rather than improved
 PASS RATES FOR DENTAL EXAMINEES
 -------------------------------
YEAR ASIANS NON-ASIANS RATIO RESIDENTS NON-RESIDENTS RATIO
-------- ------ ---------- ----- --------- ------------- -----
1974 68.8 45.9 1.50 59.3 46.2 1.28
1975 86.7 28.9 3.00 61.9 33.3 1.86
1976 78.3 25.0 3.13 76.2 28.6 2.66
1977 72.0 26.3 2.74 70.6 34.8 2.03
1978 65.5 44.0 1.49 61.1 44.2 1.38
1979 67.7 39.1 1.73 65.7 38.5 1.71
1980 FEB 77.7 23.5 3.31 77.7 23.5 3.31
1980 AUG 85.7 31.8 2.69 78.9 41.7 1.89
 
 
 [4]
 Appellants sent a questionnaire to the board of dental examiners in each of the other 49 states requesting information on resident and non-resident pass rates and on Asian and non-Asian pass rates. Nine states responded with data on resident and non-resident pass rates. These data show that from 1972 to 1979, the resident pass rate ranged from 1.7 to 2.5 times the non-resident pass rate, a differential comparable to that existing in Hawaii
 Only Oregon and California responded with data on Asian versus non-Asian pass rates, and only in California was the number of Asian applicants large enough to allow meaningful statistical comparison. The California data show that the Asian pass rate exceeded the non-Asian pass rate by 33 percent in 1977, 11 percent in 1978, and 4 percent in 1979. These differentials compare reasonably to those found in Hawaii.
 
 
 [5]
 Given the existence of shared ethnic and cultural identifications, it is reasonable to assume that Asian Americans will have, or at least perceive that they will have, a greater chance of succeeding in their dental practice in areas of significant Asian American concentrations. Since Hawaii is one of the few states with a significant Asian American population, Asian American applicants for dental licenses in Hawaii will likely have a greater incentive to pass the examination. To a lesser extent, this will also be true of Asian American applicants in California
 Moreover, many of the Asian American applicants in Hawaii are long-term residents possessing numerous and close ties with family and friends. The close ties provide an additional motivation for these applicants to pass the licensure examination as the applicants strive to fulfill family and peer expectations and to avoid the considerable embarrassment resulting from failing the examination.
 
 
 [6]
 The district judge stated in his decision that "plaintiffs have not come forward with evidence that discrimination actually occurred, and the recent examination results tend to show that it did not."
 
 
 [7]
 Given my strong belief that the award of attorneys' fees against appellants would be unjust, such a disagreement in judgment would still, of course, prompt me to dissent
 
 
 [8]
 The anonymous grading reform secured by the settlement agreement provides some public benefit by limiting the potential for future discrimination. This benefit, however, is very limited in view of the absence of prior discrimination and does not justify the award of attorneys' fees. See Aho v. Clark, 608 F.2d 365, 367 (9th Cir.1979)