Arthur J. MISISCHIA, D.M.D.,
Plaintiff–Appellant,

v.

Jennifer R. PIRIE, R.D.H., Individually, and in her Capacity as a Member of the Board of Dental Examiners; Donald T. Kawane, D.D.S., Individually, and in his Capacity as a Member of the Board of Dental Examiners; Milton Fujiuchi, D.D.S., Individually, and in his Capacity as a Member of the Board of Dental Examiners; Thad S. Kawakami–Wong, D.D.S., Individually, and in his Capacity as a Member of the Board of Dental Examiners; Angela M.A. Chin, D.M.D., Individually and in her Capacity as a Member of the Board of Dental Examiners; Marcy M. Kawasaki–Haines, D.D.S., Individually, and in her Capacity as a Chairperson of the Board of Dental Examiners; Frank K. Kajawara, D.D.S.; Alan T. Miyamoto, D.D.S.; Martin Zais, D.D.S.; Thomas Green and Carlina Bartolome, Individually and in their Capacity as Members of the Board of Dental Examiners, Defendants–Appellees.

No. 94–15135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1994.

Decided July 20, 1995.

Stanley E. Levin, Davis and Levin, Honolulu, HI, and Eric A. Seitz, Honolulu, HI, for plaintiff-appellant.

Steven S. Michaels, Deputy Atty. Gen., Honolulu, HI, for defendants-appellees.

Before BROWNING, TROTT and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

We reject a federal challenge to the fairness of the Hawaii dental board admissions procedure as applied to Dr. Misischia. Because he did not appeal the state administrative determination in the state courts, the administrative decision therefore has preclusive effect.

## I. Facts.

Dr. Misischia, a doctor of dental medicine (D.M.D.), lives in Missouri. He is licensed to practice dentistry in Missouri, California, and Florida. He serves on the faculty of an oral surgery program in Missouri. Yet he has failed the examination for admission to practice as a dentist in Hawaii three times.

In the examination that led to this lawsuit, in August 1991, Dr. Misischia was not required to retake the entire examination, only the one procedure that he had failed twice, "amalgam prep on mannequin." This test requires the applicant to put a filling in the model tooth of a dental mannequin.

Three dentists who did not know Dr. Misischia, did not know whose work they were grading, and did not consult each other, all failed him. Their primary concern was that "a contact existed between the amalgam and the adjacent tooth."

Dr. Misischia exercised his right to an informal review by another dentist. Haw.Admin.Rules § 16–79–110. The independent reviewer, Dr. Zampetti, told Dr. Misischia that he agreed light could be seen between the filling and the adjacent tooth, so he would suggest to the Dental Board that they have someone take another look at it. Dr. Zampetti wrote the Board that it "should review" the amalgam preparation and grades. The Board invited Dr. Misischia to attend the November 1991 Board meeting where it would decide how to proceed with respect to Dr. Zampetti's letter, but Dr. Misischia did not choose to fly from Missouri for the meeting.

The Board members, dentists themselves except for one dental hygienist, met and considered Dr. Zampetti's letter and looked at the mannequin themselves. The minutes say that "following review of the candidate's amalgam preparation," the Board voted unanimously that Dr. Misischia's grade was "consistent with the grading criteria and should not be changed."

Dr. Misischia, pursuant to the Hawaii Administrative Rules, requested "contested case hearing relief." Under this procedure, he could appeal his grade by proving, among other possibilities, that his grade was inconsistent with the grading criteria, that there was a substantial disadvantage to the applicant in the way the test was administered to him, or that he was "aggrieved by any action of the board." Haw.Admin.Rules §§ 16–79–112(b)(2)–(4), 16–79–110(f)(3).

A hearings officer (as the administrative adjudication officer is called in the Hawaii rules) considered evidence and argument, made findings of fact and conclusions of law, and recommended to the Board that it either resubmit Dr. Misischia's amalgam preparation on the mannequin to a new informal reviewer, or else change Dr. Misischia's grade to a pass. The reason for this recommendation had to do with procedural aspects of the grade review process, not whether the amalgam touched the adjacent tooth or anything that occurred during the examination itself. The hearings officer's findings that led him to his recommendation were that Dr. Zampetti had disclosed to Dr. Misischia that his amalgam appeared satisfactory and he would ask the Board to regrade it, and that Dr. Zampetti's report to the Board was insufficiently detailed. Also, the Board at the November 1991 meeting "did not consider the original examination sheets prepared by the graders," but instead "relied on Dr. Zampetti's synopsis and its own inspection of the mannequin."

The Board heard presentations at its January 1993 meeting from the hearings officer, a special deputy attorney general, and Dr. Misischia's attorney, listened to the tape of Dr. Zampetti's informal review and discussion with Dr. Misischia, and deliberated in camera. It then decided to reject the hearings officer's recommendation, and issued an order denying relief. Haw.Admin.Rules § 16–201–46. The only prejudice claimed from Dr. Zampetti's disclosure to Dr. Misischia was that it might have lulled Dr. Misischia into not attending the November 1991 Board meeting, but the Board concluded that Dr. Zampetti "did not say anything which could reasonably have induced petitioner not to attend." Dr. Zampetti had concluded his discussion with Dr. Misischia with these pessimistic remarks about Dr. Misischia's chances, evidently in reference to the three graders who had unanimously failed him: "[T]here's three people. If it was 2 and 1, then you would probably have a shot, but I still want somebody to look at that again."

The Board also decided that a challenge for "substantial disadvantage" had to be based on "improper administration of any aspect of the licensure examination" under Haw.Admin.Rules § 16–79–110(f)(3), not a claimed irregularity in post-examination matters, so the Board's examination of the filling in the mannequin could not amount to "substantial disadvantage." The Board concluded that Dr. Misischia was not "aggrieved" by the Board's examination of the mannequin, because this was done "to assist them in evaluating the informal reviewer's report and determining whether or not to require a regrade."

Dr. Misischia could have appealed the Board's determination to the Hawaii Circuit Court, but he elected not to do so. Instead, he brought this § 1983 action against the Board members in federal court. In his complaint in district court, he claimed that the Board members had deprived him of his federal constitutional right to due process by violating the state regulations governing dental board procedures. Basically, the complaint says that the Board should have followed the hearings officer's recommendation. He demands money damages, a declaratory judgment that the Board violated his right to due process, and an order vacating the Board's order failing him on the test, or in the alternative, requiring the Board to regrade his examination.

The district court granted summary judgment to the defendants, based on res judicata. We affirm.

## II. Analysis.

■ Dr. Misischia concedes, as he must, that he had an available means of review in state court.

> Any person aggrieved by a final decision and order in a contested case ... is entitled to judicial review....

> [P]roceedings for review shall be instituted in the circuit court within thirty days after ... service of the certified copy of the final decision and order of the agency....

Haw.Rev.Stat. § 91–14(a), (b). Because he chose not to exercise this right of appeal, the Board's order became final and operated with preclusive effect. His claims brought in federal court are precluded by the final, unappealed state administrative determination.

Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in state court. *Bator v. State of Hawaii,* 39 F.3d 1021, 1026–27 (9th Cir.1994), (citing *Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 414–16, 66 L.Ed.2d 308 (1980)). This rule extends to fact-finding by administrative agencies acting in quasi-judicial capacities. *Id.* (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 798–99, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986)). We accord preclusive effect to state administrative adjudications of legal as well as factual issues. *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032 (9th Cir.1994) (citing *Guild Wineries and Distilleries v. Whitehall Co.,* 853 F.2d 755, 758 (9th Cir.1988)).

The findings of administrative agencies are given preclusive effect by Hawaii state courts if: (1) the issue decided in the prior action is identical to the issue in the current action, (2) a final judgment on the merits was issued, and (3) the parties in the current action are the same or in privity to the parties in the prior action. *Bator,* 39 F.3d at 1027 (citing *Santos v. State of Hawaii,* 64 Haw. 648, 646 P.2d 962, 965–66 (1982)). All three of these requirements are met.

To have preclusive effect in federal court, the state administrative determination must satisfy the requirements of fairness set out in *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). *Miller,* 39 F.3d at 1032–33. These requirements are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate. *Utah Constr.,* 384 U.S. at 422, 86 S.Ct. at 1560; *Miller,* 39 F.3d at 1033. These requirements are also met in the case at bar.

The issues raised in district court were decided by the Board. *See Santos,* 646 P.2d at 966. The issue before the district court was whether Dr. Misischia was denied procedural due process because of the Board's alleged violation of the Hawaii Administrative Rules. The issue decided by the Board was whether the Administrative Rules were violated such that Dr. Misischia was "aggrieved" or subject to "substantial disadvantage." Dr. Misischia, in his complaint in district court, restated his contentions that the Administrative Rules were violated, and claimed that this amounted to a constitutional, due process violation. *See Miller,* 39 F.3d at 1034. The judicial proceeding was "based on the same allegations set forth in the [Board] action," *Santos,* 646 P.2d at 968, so the unreviewed administrative finding precludes further litigation of Dr. Misischia's contentions.

The Board concluded that Dr. Misischia had not been aggrieved or substantially disadvantaged, and that the Board had not violated procedural requirements. Of course the Board is not intended to be the final arbiter of whether it violated procedural rights of the petitioner. An aggrieved party may seek judicial review. Dr. Misischia gave up his right to judicial review by not appealing to the Hawaii Circuit Court within the 30–day period provided by Haw.Rev.Stat. § 91–14. Therefore, the Board's determination that Dr. Misischia's procedural rights were not violated became final and preclusive. *See Eilrich v. Remas,* 839 F.2d 630, 634 (9th Cir.1988) (administrative determination became final when petitioner failed to seek judicial review in state courts).

The parties in the administrative proceeding were Dr. Misischia and the Board, and the same parties appear here. Therefore, all three prongs of the *Santos* test are met.

*Utah Construction's* fairness standards are met as well. The Board was acting in a "judicial capacity." *Utah Constr.,* 384 U.S. at 422, 86 S.Ct. at 1560. Dr. Misischia was given notice of the November 1991 hearing, but decided not to attend. Dr. Misischia was also given notice of the January 1993 meeting, and his lawyer was heard on his behalf. At the February 1993 meeting, before the Board finally adopted the order at issue, Dr. Misischia's lawyer was permitted to argue again, and explain why in his view the Board was in error.

The Board resolved disputed issues "properly before it." *Utah Constr.,* 384 U.S. at

422, 86 S.Ct. at 1560. As Dr. Misischia conceded in oral argument before us, the issues in his case were properly before the Board. "An issue is properly before an administrative tribunal if that body has jurisdiction to decide it," a matter of state law. *Guild Wineries*, 853 F.2d at 759. Dr. Misischia does not argue that the Board lacked jurisdiction to decide the questions of procedure he raised.

As for the third *Utah Construction* fairness standard, Dr. Misischia had an "adequate opportunity to litigate" his complaints, at all levels of the administrative process. *Utah Constr.*, 384 U.S. at 422, 86 S.Ct. at 1560. He had an opportunity, which he chose not to take, for judicial review, and even for the presentation of evidence in the reviewing court to demonstrate procedural irregularities by the board. His right to judicial review in state court included this statutory provision: "in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court." Haw.Rev.Stat. § 91–14(f).

> [T]he availability of judicial review, even if not always determinative, is of critical importance here.... Where, as here, the agency adjudication meets the requirements of due process, and de novo judicial review is available ..., concerns of comity and finality counsel against denying preclusive effect.

*Miller*, 39 F.3d at 1038 (citations omitted). "If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." *Eilrich*, 839 F.2d at 632 (internal quotations omitted).

Dr. Misischia's primary challenge to the fairness of the Board's procedure was that, in his and the hearings officer's view, the Board members should not have looked at the filling he did in the mannequin themselves, and their doing so amounted to an improper regrading of his examination. The Board's position was that they examined the mannequin, much as any appellate court sometimes examines evidence offered in the trial court, to decide whether the graders' decision should be affirmed, not to regrade the filling themselves. When Dr. Misischia elected not to appeal to the Hawaii Circuit Court from the Board's decision regarding its examination of the mannequin and his other procedural challenges, the Board's decision became final, and precluded reexamination in federal court for procedural errors.

■ Dr. Misischia also argues that the district court should have reviewed the Board's procedure for compliance with the federal decree in *Pekarsky v. Ariyoshi*, Civil No. 76–0455 (D.Haw.1980); *see also Pekarsky v. Ariyoshi*, 695 F.2d 352 (9th Cir.1982). In the *Pekarsky* litigation, the Hawaii dental examination was challenged on the ground that unfair procedures were used to exclude white and non–Hawaiian applicants from practice. That case was concluded by a consent decree requiring anonymity of examination procedures and other safeguards against favoritism and discrimination. Dr. Misischia argues on appeal that under the *Pekarsky* decree, the Board had no discretion to reject the informal reviewer's recommendation that his filling in the mannequin be regraded.

Dr. Misischia did not file a motion in the *Pekarsky* case for an order to show cause. Nor did he plead in his case that the Board's conduct violated the *Pekarsky* decree, attempt to consolidate the cases, or otherwise seek to associate his claim with the *Pekarsky* case. On appeal, he purports to have been attempting to enforce the *Pekarsky* decree, but that was not what he pleaded in district court. We therefore need not consider appellee's argument that *Pekarsky* is no longer enforceable, or appellant's rejoinder that the decree requires compliance "at all times now and in the future."

■ Dr. Misischia also argues that the federal district court in this case should have performed the same judicial review of the Board decision which the Hawaii Circuit Court would under the Hawaii statute. Haw. Rev.Stat. § 91–14. His theory is that this power would fall within the supplemental jurisdiction of the district court under 28 U.S.C. § 1367(a). If it did not, then he argues the district court should have remanded the case to the Hawaii Circuit Court

instead of dismissing. The case could not be remanded to the Hawaii Circuit Court, because it had not been filed there or removed from that court. A litigant cannot use supplemental jurisdiction to have a federal judge instead of a state judge perform the judicial review of a state administrative agency decision which the state statute assigns to a state court. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984); *Han v. United States Dept. of Justice,* 45 F.3d 333, 339 (9th Cir.1995) ("We are barred by the Eleventh Amendment from deciding claims against state officials based solely on state law.").

AFFIRMED.