FILED

MAR 27 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   NV-16-1099-KuLJu
                                          )
ROBERT COOPER BROWN, III and              )    Bk. No.   3:15-bk-51542
LAURA ANN BROWN,                          )
                                          )
                    Debtors.              )
_____   )
                                          )
ROBERT COOPER BROWN, III;                 )
LAURA ANN BROWN,                          )
                                          )
                    Appellants,           )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
DAVID BEAVER; CATHERINE BEAVER,)
                                          )
                    Appellees.            )
_____   )

Argued and Submitted on February 24, 2017
at Las Vegas, Nevada

Filed – March 27, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

Appearances:    Christopher Burke argued for Appellants; Amy N.
                Tirre argued for Appellees.

Before: KURTZ, LAFFERTY and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Robert and Laura Brown appeal from an order dismissing their chapter 13[1] bankruptcy case with respect to Robert only.[2] The bankruptcy court held that, at the time the chapter 13 petition was filed, Robert's debt to David and Catherine Beaver was noncontingent and liquidated in an amount that exceeded § 109(e)'s eligibility limit for unsecured debt.

On appeal, the Browns argue that a settlement agreement the parties entered into during the Browns' prior chapter 7 case liquidated Robert's debt in the amount of $171,000 and provided for an increase of that debt to $500,000 only upon the occurrence of an extrinsic event (Robert's uncured default in making settlement payments). Because this supposed triggering event did not occur before the Browns commenced their chapter 13 case, Robert contends only the lesser amount of $171,000 (less settlement payments made) should have been counted against the § 109(e) unsecured debt eligibility limit.

We disagree with the Browns' interpretation of the settlement. Under the only reasonable interpretation of the settlement, the Beavers held a noncontingent claim against Robert liquidated in the amount of $500,000 (less settlement payments made) – an amount that exceeded the § 109(e) unsecured debt

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]For ease of reference, we refer to Robert by his first name. No disrespect is intended.

eligibility limit.

Therefore, we AFFIRM.

**FACTS**

The dispute between Robert and the Beavers began over fifteen years ago when, according to the Beavers, Robert failed to build them a house as contracted and allegedly used the construction funds for his own purposes. In 2004, the parties reached a settlement in the ensuing state court litigation pursuant to which "Brown promised to complete construction of the Beavers' home within two years, at no further cost to Beavers." Third Amended Complaint (Feb. 23, 2011) at ¶ 46; see also Answer to Third Amended Complaint (Feb. 13, 2012) at ¶ 1 (admitting ¶ 46 of the complaint).[3]

Several years later, the parties reached a further impasse, so the Beavers returned to the state court with an amended complaint alleging a new cause of action for breach of the settlement agreement. In 2010, the state court entered an order granting the Beavers partial summary adjudication, which did not determine Robert's liability but did determine that the damages arising from Robert's failure to build the Beavers' home per the settlement agreement amounted to $626,568.66, "plus other sums to be determined at trial." Third Amended Complaint (Feb. 23, 2011) at ¶ 51; see also Answer to Third Amended Complaint (Feb. 13,

---

[3]These early facts are drawn from allegations that Robert admitted in the Beavers' nondischargeability adversary proceeding (Adv. No. 11-05002) against Robert in the Browns' first bankruptcy case, District of Nevada Bankruptcy Case No. 10-54665. The same facts are recited in the Stipulation for Entry of Nondischargeable Judgment executed by the parties and approved by court order in 2012.

3

2012) at ¶ 1 (admitting ¶ 51 of the complaint).

In November 2010, on the same day the state court trial was scheduled to commence, the Browns commenced their chapter 7 bankruptcy case. The Beavers removed the state court lawsuit to the bankruptcy court and, with leave of court, filed their third amended complaint, which effectively converted that lawsuit into a nondischargeability action on multiple grounds.

Nearly two years later, in 2012, the parties reached a new settlement. This second settlement provided for Robert to make 15 years of payments in the aggregate sum of $171,000. The second settlement further provided that, if Robert defaulted on the payments or on his other obligations and did not cure the default within ten days of receipt of written notice of the default, the Beavers could cause to be entered and enforced a $500,000 stipulated nondischargeable judgment.

If Robert had timely made all of the required settlement payments, the Beavers would have been required under the second settlement to file a "Satisfaction of Nondischargeable Judgment" and were prohibited from entering the $500,000 stipulated nondischargeable judgment. But Robert defaulted on the required settlement payments, and the Beavers sent Robert the requisite notice of default.

Before the cure period ran, the Browns filed their chapter 13 bankruptcy petition in late 2015. Shortly thereafter, in January 2016, the Beavers filed a motion seeking relief from the automatic stay to permit entry of the $500,000 nondischargeable judgment against Robert and seeking the dismissal of the case based on the debtors' chapter 13

4

ineligibility under § 109(e).[4]

Pursuant to the second settlement agreement, the Beavers asserted that Robert owed them $500,000 (less $9,000 in settlement payments made), so Robert's unsecured debt exceeded the $383,175 unsecured debt eligibility limit. In response, Robert argued that, at the time he and his wife filed their chapter 13 petition, he only owed $171,000 (less settlement payments made).

The bankruptcy court disagreed with Robert. As a preliminary matter, the court noted that it had presided over the settlement conference between the parties in the Brown's prior chapter 7 case, that it also had presided over the hearing on the motion seeking approval of the second settlement, that it had signed the order approving the second settlement agreement and that it had reviewed the transcript from the settlement conference, at which time it had stated on the record, on behalf of the parties, the principal settlement terms.

According to the court, the settlement provided for fifteen years of graduated payments totaling $171,000, "[b]ut the amount of the debt was clearly $500,000, which would be reduced to [$171,000] only if the $171,000 was actually paid." Hr'g Tr. (March 17, 2016) at 5:5-7. Alternately stated, the court determined that, under the settlement agreement, "[t]here was a $500,000 non-dischargeable obligation that could be reduced to

---

[4]Whereas the Beavers initially sought dismissal against both debtors, they later conceded that only Robert was subject to the $500,000 nondischargeable obligation and that his wife was eligible to be a chapter 13 debtor under § 109(e).

$171,000 so long as the debtor, Mr. Brown, complied with the [payment] terms of the second settlement . . . ." Hr'g Tr. (March 17, 2016) at 16:2-4. In so determining, the court further concluded that the debt was neither contingent nor unliquidated at the time of the Browns' chapter 13 bankruptcy filing.

The bankruptcy court entered its order dismissing Robert from the chapter 13 case on March 30, 2016, and the Browns timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it held that, at the time of the Browns' chapter 13 petition filing, Robert was obligated to the Beavers for a liquidated and non-contingent debt in excess of the chapter 13 unsecured debt eligibility limit?

## STANDARDS OF REVIEW

The meaning of the statutory terms "liquidated" and "noncontingent" is a question of law we review de novo. Nicholes v. Johnny Appleseed (In re Nicholes), 184 B.R. 82, 86 (9th Cir. BAP 1995). Whether a particular debt fits within the statutory terms for debt eligibility purposes similarly is a question of law reviewed de novo. Id.; see also Guastella v. Hampton (In re Guastella), 341 B.R. 908, 915 (9th Cir. BAP 2006) ("Whether a debt is liquidated involves an interpretation of the Bankruptcy Code and is reviewed de novo.").

Both parties urge that the contingency and liquidation issues turn on the correct interpretation of the settlement agreement. For interpretation purposes, settlement agreements are treated like contracts and generally are reviewed de novo. See Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp), 752 F.2d 1334, 1338 (9th Cir. 1984); Pekarsky v. Ariyoshi, 695 F.2d 352, 354 & n.1 (9th Cir. 1982); Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist., 626 F.2d 95, 98 (9th Cir. 1980); see also NGA # 2 Ltd. Liab. Co. v. Rains, 946 P.2d 163, 167 (Nev. 1997) (stating that construction of contractual terms is a question of law).

We can affirm the bankruptcy court's ruling on any ground supported by the record. Wirum v. Warren (In re Warren), 568 F.3d 1113, 1116 (9th Cir. 2009).

## DISCUSSION

This appeal for the most part turns on a single issue: whether, at the time of the Browns' chapter 13 bankruptcy filing, Robert's debt to the Beavers was noncontingent and liquidated in an amount that exceeded the chapter 13 eligibility limit for unsecured debt. At the time of the Browns' chapter 13 filing, the applicable version of § 109(e) provided as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 may be a debtor under chapter 13 of this title.

7

(Footnote Omitted.)

While the terms noncontingent and liquidated are not defined in the statute, the Ninth Circuit Court of Appeals has given them fixed meanings. "A claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor,'" and "[a] claim is 'unliquidated' when it is not 'subject to ready determination and precision in computation of the amount due.'" Picerne Constr. Corp. v. Castellino Villas, A. K. F. LLC (In re Castellino Villas, A. K. F. LLC), 836 F.3d 1028, 1033 (9th Cir. 2016) (citing Fostvedt v. Dow (In re Fostvedt), 823 F.2d 305, 306 (9th Cir. 1987)).

Before we consider whether Robert's debt falls within the definition of these terms, we first must resolve a threshold issue. Generally speaking, chapter 13 eligibility "should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 982 (9th Cir. 2001). In Scovis, the Court of Appeals reversed a decision of this panel regarding chapter 13 eligibility because we did not adhere to this rule. Id. Nonetheless, the Scovis rule is not absolute. Scovis acknowledged that, when the good faith of the debtors in filing their schedules is challenged, the bankruptcy court can consider evidence beyond the schedules. Id.; see also In re Guastella, 341 B.R. at 918-21 (applying good faith exception and looking beyond schedules to determine that debtor improperly listed debt at $0 for eligibility purposes).

8

More importantly, although it enunciated a simple rule, that the schedules govern for purposes of determining eligibility, Scovis also recognized an important exception: the schedules do **not** govern when it is clear to a legal certainty that a different result should obtain. Scovis, 249 F.3d at 983-84. In Scovis, one of the scheduled claims at issue was secured by a lien **potentially** avoidable as an impairment of the Scovis's homestead exemption. Id. Scovis held that it was appropriate to depart from the schedules' listing of the claim as secured because the effect of the scheduled homestead exemption on the scheduled secured claim was "readily ascertainable" and was subject to "a sufficient degree of certainty." Id. at 984.

In a similar vein, we do not construe Scovis as requiring the bankruptcy court, in reading the schedules for eligibility purposes, to ignore what it knows based on prepetition events that occurred before the same bankruptcy court in a prior bankruptcy case. In the parlance of Scovis, if the undisputed occurrence of events during the prior bankruptcy case: (1) are "readily ascertainable"; (2) are subject to "a sufficient degree of certainty"; and (3) unequivocally establish that the claims as scheduled are wrong, then the bankruptcy court should not be bound to the face of the schedules for purposes of determining the debtors' chapter 13 eligibility.

Our reading of Scovis is bolstered by its observation – distilled from Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751, 756-57 (6th Cir. 1985) – that the rule for determining § 109(e) eligibility "is similar in nature to the subject matter jurisdiction context for purposes of

9

determining diversity jurisdiction." Scovis, 249 F.3d at 982. Discussing the test for determining the amount in controversy in the diversity jurisdiction context, the Supreme Court in St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-90 (1938), articulated a test analogous to the Scovis test used in chapter 13 cases. Under the St. Paul Mercury test, as restated in Pearson, "the amount claimed in good faith by the plaintiff controls **unless it appears to a legal certainty** that the claim is for less than the jurisdictional amount or the amount claimed is merely colorable." Pearson, 773 F.2d at 757 (emphasis added) (citing St. Paul Mercury, 303 U.S. at 288-90).

As more fully explained in St. Paul Mercury:

> [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed **or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount,** and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

303 U.S. at 288-90 (emphasis added).[5]

---

[5]Some courts have characterized the legal certainty exception to following the schedules as being subsumed within the good faith inquiry. See, e.g., In re Smith, 419 B.R. 826, 829 (Bankr. C.D. Cal. 2009), aff'd in part, 435 B.R. 637 (9th Cir. BAP 2010) ("Bad faith, in this context, exists when it appears to a legal certainty that the claim is not what the debtor reported."). But we think it is more faithful to Scovis, Pearson and St. Paul Mercury to conceive of the legal certainty exception as a separate and independent inquiry that may affect whether it is appropriate to accept at face value the debtor's schedules for § 109(e) eligibility purposes. As this panel determined in its decision affirming in part the Smith bankruptcy court's ruling,

(continued...)

10

Indeed, when a rule of law would make it "virtually impossible" for the plaintiff to establish the requisite amount in controversy, the legal certainty rule permits the court to depart from the amount of damages alleged in the plaintiff's complaint. See Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986). And the court "may go beyond the pleadings for the limited purpose of determining the applicability of the rule [of law]." Id.

Returning to the undisputed facts in the record before the bankruptcy court here, those facts established that Robert and the Beavers entered into the second settlement agreement which fixed the amount of Robert's nondischargeable obligation to the Beavers. Thus, figuring the amount and status of Robert's debt at the time of the Browns' chapter 13 bankruptcy filing is a relatively straightforward matter of construing the parties' rights and liabilities under the second settlement agreement.

We apply Nevada law in interpreting the second settlement even though the agreement was brokered and approved in a bankruptcy court. See Cannon v. Haw. Corp. (In re Haw. Corp.), 796 F.2d 1139, 1143 (9th Cir. 1986); Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp), 649 F.2d 1329, 1332–33 (9th Cir. 1981). Under Nevada law, our contract interpretation efforts must strive to give effect to the parties' intended meaning as manifested by the contract's express terms. Galardi

---

[5](...continued)
the "principle of certainty" may apply even if the debtor's good faith in filing its schedules has not been challenged. 435 B.R. at 646–47.

11

*v. Naples Polaris, LLC*, 301 P.3d 364, 367-69 (Nev. 2013); *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970). That meaning typically is derived from the terms the parties chose and in light of the context in which the terms were used. *Galardi*, 301 P.3d at 367; *see also* *Mohr Park Manor, Inc. v. Mohr*, 424 P.2d 101, 105 (Nev. 1967) ("A court should ascertain the intention of the parties from the language employed as applied to the subject matter in view of the surrounding circumstances."). The ordinary and reasonable meaning of contract terms is preferred. *Galardi*, 301 P.3d at 368.

Here, the patent meaning of the parties' settlement agreement terms is straightforward. By way of the second settlement, the parties sought to fully and finally resolve the questions regarding Robert's liability to the Beavers and regarding the nondischargeability of that debt. If Robert timely paid all of the required settlement payments in the aggregate amount of $171,000, his obligations to the Beavers would be treated as fully satisfied. On the other hand, if Robert defaulted on his settlement payments – and did not timely cure the default – the Beavers were entitled to have entered against Robert a judgment for $500,000 in nondischargeable debt (less any settlement payments made).

There is only one reasonable interpretation of these settlement agreement terms. By way of the second settlement, the parties agreed that Robert's debt to the Beavers would be nondischargeable in the amount of $500,000, subject to a condition subsequent: if Robert timely paid the $171,000 in settlement payments, the entire nondischargeable obligation would

12

be deemed satisfied. The concept of a condition subsequent – a specific subsequent event that can extinguish a prior binding contractual obligation – is recognized under Nevada law. See, e.g., Am. Bank Stationery v. Farmer, 799 P.2d 1100, 1102 (Nev. 1990); Prudential Ins. Co. of Am. v. Lamme, 425 P.2d 346, 348 (Nev. 1967).

The Browns contend on appeal that Robert's nondischargeable obligation of $500,000 was not subject to a condition subsequent but rather was subject to a condition precedent: an uncured default in settlement payments. We reject this interpretation of the second settlement as unreasonable. The Browns point to the settlement term providing for the entry of a $500,000 nondischargeable judgment only upon the occurrence of an uncured default. However, this settlement term on its face deals with enforcement of the debt and not with its creation.

More importantly, the Browns' posited interpretation of the second settlement and their contention that the $500,000 debt was subject to a condition precedent is unreasonable because it would render invalid one of the key terms of the settlement – the term providing for entry of the $500,000 nondischargeable judgment. Under Nevada law, a contractual term providing for a $500,000 debt as a consequence for not timely paying a $171,000 obligation typically would constitute an unenforceable penalty. See generally Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co., 649 F.Supp. 1310, 1316–17 (D. Nev. 1986), aff'd, 844 F.2d 792 (Mem. Dec.) (9th Cir. April 4, 1988) (applying Nevada law and holding that a so-called liquidated damages provision constituted an unenforceable penalty when the adverse party demonstrated that

13

the agreed liquidated damages were disproportionate with the actual damages suffered by the proponent).

Nevada law requires us to prefer a contract interpretation that renders the contract's terms lawful, valid and enforceable. Mohr, 424 P.2d at 104-05; see also Restatement (Second) of Contracts § 203(a) (1981). By interpreting the timely payment of the $171,000 in settlement payments as a condition subsequent that would extinguish the entire, pre-existing $500,000 obligation, we comply with this contract construction requirement.

Accordingly, on the date of the Browns' chapter 13 bankruptcy filing, the Beavers held a noncontingent claim liquidated in the amount of $500,000 (less $9,000 in settlement payments made). This claim was not subject to a contingency within the meaning of § 109(e) because the parties to the second settlement did not contemplate that any further act or event was necessary to trigger the liability. In re Fostvedt, 823 F.2d at 306-07. By its very nature, the condition subsequent was not necessary to trigger the liability. Thus, the liquidated amount of this noncontingent debt exceeded the § 109(e) eligibility limits for unsecured debt, and the bankruptcy court correctly determined that Robert was ineligible to be a chapter 13 debtor.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's order dismissing Robert's chapter 13 bankruptcy case is AFFIRMED.

14