**In re WILLIAMS LAND COMPANY, INC., Debtor.**

**In re W–3 LIVESTOCK COMPANY, INC., Debtor.**

**Bankruptcy Nos. 687–07460–R12, 687–07461–R12.**

United States Bankruptcy Court, D. Oregon.

Sept. 16, 1988.

Dunbar Carpenter, Joseph, Babener & Carpenter, Portland, Or., for debtors.

Thomas Marks, Beaverton, Or., trustee.

John Albert, Churchill, Leonard, Brown & Donaldson, Salem, Or., for Interstate Production Credit Ass'n.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court on Interstate Production Credit Association's (IPCA) Motion to Dismiss.

## BACKGROUND

On July 7, 1987 debtors Williams Land Co., Inc. (Williams Land) and W-3 Livestock, Co., Inc. (W-3) filed separate petitions for relief under Chapter 12 of the Bankruptcy Code.

On March 8, 1988 W-3 and Williams Land filed identical Chapter 12 reorganization plans. On May 6, 1988, based on the debtors' joint motion, an order was entered herein that substantively consolidated the two cases.

Several creditors filed objections to the debtors' proposed Chapter 12 plan. IPCA also filed a motion to dismiss contending that the debtors are ineligible for Chapter 12 relief. Creditor, Kenneth W. Gest, also objected to confirmation of the debtors' proposed plan based, in part, on the assertion that the debtors are ineligible for Chapter 12 relief.

A confirmation hearing was held in June, 1988. Since dismissal or conversion of this case would be mandatory if the debtors are ineligible for Chapter 12 relief, the court deferred consideration of the other objections to confirmation interposed by creditors and indicated that the confirmation hearing would be adjourned, to be reset, if necessary after a ruling on the motion to dismiss.

The undisputed facts are as follows. Both debtors are Oregon corporations. Williams Land holds title to most of the real property and some of the personal property involved in the cattle and farming operations of W-3. W-3 owns the farm equipment, the cattle, some of the real property and conducts the farming operations upon all the land that makes up the ranch.

W-3 and Williams Land have identical officers and directors, with Harold Williams, Gary Williams, and Euveta Williams serving as directors, and as President, Vice-President and Secretary, respectively.

Harold Williams, Euveta Williams and Gary Williams own 100% of the shares of W-3 and 99.4% of the shares of Williams Land. Susan Magnone owns the other .6% of the shares of Williams Land.

Harold and Euveta Williams are husband and wife. Gary Williams is their son and Susan Magnone is their daughter.

The only purpose and business of both corporations is to engage in ranching and farming operations using the combined personal and real property of W-3 and Williams Land.

Since its incorporation, W-3 has shared common bookkeepers, office space and accountants with Williams Land.

There are no written agreements, contracts, or leases for the payment of funds between W-3 and Williams Land. All income received from farming operations is deposited in the bank account of W-3. If and when Williams Land incurs bills, a check is drawn on the single bank account and the funds paid on behalf of Williams Land are credited as a lease payment by W-3 to Williams Land. The so called lease payments vary from year to year as funds are needed by Williams Land. Debtors make no attempt to set the payments at a commercially reasonable rate.

The schedules of Williams Land reflect the following debts:

| Creditors | Amount |
|---|---|
| Federal Land Bank | $ 169,659.34 |
| *IPCA | $ 995,121.70 |
| Oregon Dept. of Water Resources | $ 155,000.00 |
| Stuart Foster | $ 3,264.00 |
| Michael D. Miller | $ 3,185.00 |
| Wayne Nichols | $ 1,500.00 |
| Klamath County | $ 5,000.00 |
| Total | $1,322,730.04 |

The schedules of W–3 reflect the following debts:

| Creditors | Amount |
|---|---|
| Deutz Allis Credit Corp. | $ 12,000.00 |
| Farmers Home Administration | $ 82,501.75 |
| *IPCA | $ 995,121.70 |
| J.W. Kerns Irrigation Co. | $ 11,862.49 |
| Williams Land Co. | $ 16,893.49 |
| Klamath County | $ 1,103.40 |
| Total | $1,120,586.27 |

The following proofs of claim have been filed in the Williams Land proceeding:

| Creditor | Amount |
|---|---|
| *Federal Land Bank | $ 183,195.93 |
| *IPCA | $1,014,903.09 |
| Oregon Dept. of Water Resources | $ 146,444.26 |
| Stuart Foster | $ 3,892.30 |
| Michael Miller | $ 3,185.00 |
| Wayne Nichols | $ 1,850.00 |
| Susan Magnone | $ 36,450.00 |
| *Hub Ranches, Ltd./Kenneth W. Gest | $ 44,529.45 |
| Total | $1,434,450.03 |

The following proofs of claim have been filed in the W–3 proceeding:

| Creditor | Amount |
|---|---|
| *Federal Land Bank* | $ 183,195.93 |
| *IPCA | $1,014,903.09 |
| Farmers Home Administration | $ 88,699.56 |
| J.W. Kearns Insurance Company | $ 11,564.00 |
| Deutz Allis Credit Company | $ 12,091.16 |
| *Hub Ranches Ltd./Kenneth W. Gest | $ 44,529.45 |
| Total | $1,354,983.19 |

*Denotes a debt that is common to both debtors.

The debtors have not indicated that any of the scheduled debts are disputed, nor have the debtors indicated that they dispute any of the proofs of claim as set forth above with the possible exception of the claim of Hub Ranches Ltd./Kenneth W. Gest which was not a scheduled obligation. In addition, both debtors have scheduled, in schedule B–2, a potential claim against Kenneth Gest as contract purchaser of real property, value undetermined. The court shall, therefore, treat the Hub Ranches Ltd./Kenneth W. Gest claim as a disputed claim for the purposes of this opinion.

## ISSUES

IPCA has moved to dismiss as to both debtors on the basis that their aggregate debts exceed $1,500,000.00, when combined. In addition, as to Williams Land, IPCA has moved to dismiss on the basis that Williams Land is not a "family farmer with regular income" and that Williams Land is not engaged in a farming operation.

The debtors contend that by viewing all of the circumstances in this case, Williams Land is engaged in a farming operation and has regular income. In addition, the debtors contend that each corporate entity should be viewed as a separate entity for the purpose of the $1,500,000.00 debt ceiling.

Further, if both corporations are considered as a single entity, the aggregate debts of both Williams Land and W–3 are still below $1,500,000.00, since the schedules, filed by the debtors, should govern any determination of eligibility so long as they are filed in good faith, rather than the proofs of claims filed by creditors.

Finally, the debtors urge this court to disregard the Susan Magnone claim since she has waived any right to payment under any proposed Chapter 12 plan.

## DISCUSSION

All statutory references are to the Bankruptcy Code Title 11 United States Code unless otherwise indicated.

IPCA argues that, for eligibility purposes, the two debtor corporations should be viewed as one.

Only a "family farmer" with a regular annual income is eligible for Chapter 12 relief. § 109(f). A "family farmer" is defined in § 101(17) as follows:

(17) "family farmer" means—

(A) individual or individual and spouse engaged in a farming operation whose aggregate debt do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises

out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; or

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) *its aggregate debts do not exceed $1,500,000* and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded; (emphasis added)

■ Congress intended that Chapter 12 provide relief for a farming family. The form the family chooses to do business in, whether as a proprietorship, partnership or corporation is immaterial so long as the requirements of § 101(17) are met. Obviously, Congress did not intend that eligibility requirements could be easily circumvented by multiple filings in different forms by, essentially, the same entity or family.

Separate Chapter 12 filings by a husband and wife to escape the aggregate debt requirement of § 101(17) were rejected by the court in *In re Johnson*, 73 B.R. 107 (Bankr.S.D.Ohio 1987). This same rationale must hold true for the separate corporate filings in this case. To hold otherwise would permit debtors to elude Chapter 12 eligibility requirements by simply creating multiple corporations to participate in the farming operations.

■ In determining whether separate corporate entities should be combined for eligibility purposes this court considers the following factors to be important:

1) the degree to which the corporations are controlled by the same principals or relatives of the same principals;

2) whether or not, the corporations are part of an integrated farming operation; and

3) whether or not the corporations have common debts and the amount of such common debt.

■ Here, both debtors are owned by the same individuals who are all part of the same family. Their officers and directors are identical. The operations of both debtors are inextricably interwoven. They are clearly part of an integrated farming operation. On the evidence before the court it appears that their common debts are almost 1.2 million dollars. This court further notes, with interest, that these two cases have been *substantively consolidated* on the *debtors'* motion and that a joint Chapter 12 plan has been proposed. On these facts, the debtors shall be treated as one entity for eligibility purposes.

■ In order to be eligible for Chapter 12 relief, a debtor must meet the requirements of § 101(17) as of the date of filing, *In re Mikkelsen Farms, Inc.*, 74 B.R. 280 (Bankr.D.Or.1987). Accordingly, the debtors argue that this court should look solely to the schedules filed by the debtors, if filed in good faith, to establish eligibility and should not consider the proofs of claim filed by creditors. Debtors rely upon *In re Pearson*, 773 F.2d 751 (6th Cir.1985) and *In re King*, 9 B.R. 376 (Bankr.D.Or.1981).

In *Pearson, supra,* the court stated that "Chapter 13 eligibility should *normally* be determined by the debtors schedules checking only to see if the schedules were made

in good faith." (emphasis added) 773 F.2d at 757. In *King, supra,* Judge Hess pointed out that ... "the term 'debt' is limited to liability upon a 'claim' ..." 9 B.R. at 378. Accordingly, he declined to include disputed claims in determining Chapter 13 eligibility requirements under § 109(e).

In Chapter 12, it has been held that the amount of debts listed on a debtor's schedules creates a rebuttable presumption of the amount of debt. *In re Labig,* 74 B.R. 507 (Bankr.S.D.Ohio 1987). That court further stated, however, that it would look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest. *See also: In re Carpenter,* 79 B.R. 316 (Bankr.S.D.Ohio 1987).

The cases relied upon by the debtors do not limit this court's inquiry as to the debtor's eligibility, solely to the schedules.

BR 3001(f) provides:

> (f) A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

A creditor filing a proof of claim is to state the amount owing to the creditor as of the date the petition is filed.

■ Accordingly, this court deems it appropriate to consider the proofs of claim filed by creditors where such claims have been filed and to rely on the debtors' schedules where any creditor may have failed to file a proof of claim. Following the reasoning of the court in *King,* this court will not consider any disputed claims for eligibility purposes. In addition, since this court considers both debtor corporations as one entity for eligibility purposes, the debt scheduled in the W–3 proceeding as owing to Williams Land in the amount of $16,893.49 has not been counted. Debts scheduled as precautionary have also been omitted unless an appropriate proof of claim has been filed.

Here, an examination of the proofs of claims and schedules taken together indicate the following combined debt totals:

| Creditor | Amount |
| --- | --- |
| Federal Land Bank | $ 183,195.93 |
| IPCA | $1,014,903.09 |
| Farmers Home Administration | $ 88,699.56 |
| Oregon Dept. of Water Resources | $ 146,444.26 |
| Stewart Foster | $ 3,892.30 |
| Michael Miller | $ 3,185.00 |
| Wayne Nichols | $ 1,850.00 |
| Klamath County | $ 5,000.00 |
| J.W. Kearns Insurance Co. | $ 11,564.00 |
| Deutz Allis Credit Co. | $ 12,091.16 |
| Klamath County | $ 1,103.40 |
| Susan Magnone | $ 36,450.00 |
| | $1,508,378.70 |

Thus, the aggregate debts of the debtor corporations exceed $1,500,000.00.

After filing her proof of claim, Susan Magnone submitted a waiver of right to payment in any Chapter 12 plan the debtors propose. Debtors argue that this waiver negates the claim, thus, the Magnone debt should not be counted for eligibility purposes, thereby reducing the aggregate debts below the $1.5 million ceiling.

■ While a pre-filing waiver might negate the debt, the *post-petition* waiver of a claim has no effect for eligibility purposes. *In re Labig, supra.* This claim has not been disputed by the debtors.

■ The fact that Magnone is an insider also has no bearing on whether or not the debt should be counted. If Congress had wanted to exclude insider debt, it could have plainly stated such exclusion as it did in *§ 303(b)(2),* relating to involuntary bankruptcies.[1] § 101(17) contains no such exclusion. The language is clear; *all debts* are counted for the purpose of the 1.5 million dollar limit.

Chapter 12 was enacted by Congress as a tool for family farmers to use in reorganizing their business and financial affairs so as to weather the pending financial crisis in much of rural America. However, Congress made it clear that Chapter 12 was not to apply to all farm-

---

1. § 303(b)(2) provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> (2) if there are fewer than 12 such holders, *excluding any* employee or *insider* of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 742(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims; (emphasis added).

ing operations, of whatever size. One of the restrictions which Congress incorporated into Chapter 12 was that a farming operation with in excess of $1,500,000.00 of indebtedness would not constitute a family farm, and thus, would not be eligible for Chapter 12 relief. The court is cognizant of the Stedman's farming operation, and considers their operation to be a family farm operation, as the term family farm is commonly used by laymen. However, their operation does not meet the stringent guidelines which Congress has placed on farms eligible for Chapter 12 relief, and the court cannot ignore the rather specific criteria which Congress has established for those seeking Chapter 12 relief.

*In re Stedman,* 72 B.R. 49, 54 (Bankr.D.N. D.1987).

Like the court in *Stedman,* this court is aware that the Williams Land/W–3 farming operation would normally be considered to be a family farming operation by a lay person. This court is, however, constrained to reach the same result as was reached by the *Stedman* court for the reasons expressed therein. Accordingly, IPCA's motion to dismiss must be granted.

In light of the foregoing, this court need not reach the other issues raised by the parties.

This opinion constitutes the court's findings of fact and conclusions of law; they shall not be separately stated.

### ORDER

This matter having come before the court upon Interstate Production Credit Association's motion to dismiss, the court having heard the argument of counsel, having entered its opinion herein and being fully advised in the premises;

Now, therefore, IT IS HEREBY ORDERED that this case be and it hereby is dismissed.