In re Teresa A. GUASTELLA, Debtor.

Teresa A. Guastella, Appellant,

v.

Richard Hampton; Nancy Hampton; Elizabeth F. Rojas, Chapter 13 Trustee, Appellees.

BAP No. CC–05–1104–LMaPa.
Bankruptcy No. SV 04–15230 KT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 18, 2005 at Los Angeles, California.

Filed—April 11, 2006.

Richard Mark Garber, North Hollywood, CA, for Teresa A. Guastella.

Louis J. Esbin, Law Office of Louis J. Esbin, Valencia, CA, for Richard and Nancy Hampton.

Before: LEE,[1] MARLAR and PAPPAS, Bankruptcy Judges.

## OPINION

LEE, Bankruptcy Judge.

### I. INTRODUCTION

In this appeal, we examine the standard of "good faith" as it relates to the preparation of bankruptcy schedules and its application to the determination of chapter 13

---

1. Hon. W. Richard Lee, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

eligibility under 11 U.S.C. § 109(e).[2] Appellant, Teresa A. Guastella ("Guastella"), appeals the bankruptcy court's orders dismissing her chapter 13 case for lack of eligibility and denying her request to vacate the dismissal order. Guastella listed her debt to Appellees, Richard and Nancy Hampton (the "Hamptons"), as $0.00. The bankruptcy court, after examining the record, determined that Guastella's noncontingent liquidated unsecured debt exceeded the statutory eligibility limit in § 109(e), even though her schedules stated otherwise. Guastella contends that the bankruptcy court erred in finding that the schedules were not prepared in good faith. We AFFIRM.

## II. FACTS

*The State Court Litigation.*

On July 15, 2004, the Superior Court of California, County of Ventura, (the "State Court") issued a tentative decision (the "Tentative Decision") after a trial on the merits in the civil case of *Hampton v. Guastella, et al.,* Case No. SC027078 (the "State Court Litigation"). In its Tentative Decision, the State Court found, *inter alia,* that Guastella had conspired with her parents to conceal the proceeds from the fraudulent sale of a house to the Hamptons. The background of the State Court Litigation is summarized from findings of fact in the Tentative Decision and from Guastella's declarations in the record.

Guastella's parents, Angelo and Rose Ann Guastella (the "Parents") owned a house located on Appleton Road in Simi Valley, California (the "Appleton House") which had been severely damaged by the 1994 Northridge earthquake. The damage rendered the Appleton House structurally unsound and uninhabitable. In 1997, an inspector advised the Parents that the cost to repair the Appleton House would exceed its value.

In 1999, the Parents decided to sell the Appleton House without making the needed repairs. Initially, the Parents answered "yes" to a question on the real estate disclosure statement that they were aware of earthquake damage to the Appleton House. The House did not sell at that time. Later that year, the Parents made cosmetic repairs to the Appleton House and re-listed it for sale. They prepared another disclosure statement and answered "no" to the same question regarding their knowledge of earthquake damage. The Hamptons bought the Appleton House for $210,000. The purchase agreement required the Parents to disclose all known defects to the House, which they failed to do, and the Hamptons did not discover the defects until after they took possession.

The Parents used the proceeds from the Appleton House to purchase another house located on Laguna Drive in Simi Valley (the "Laguna House"). However, after the Hamptons threatened legal action, the Parents sold the Laguna House in March 2000, for $158,444.68 and gave the proceeds to Guastella.

Shortly thereafter, Guastella used the money as a down payment for another house, her current residence, located on El Monte Road in Simi Valley (the "El Monte House"). Guastella qualified for the purchase money financing and bought the El Monte House in her name alone. She subsequently quitclaimed a 50% interest in the El Monte House to her parents for no consideration.

**2.** Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., applicable to cases filed before October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

The Hamptons filed the State Court Litigation against the Parents and Guastella and sought, *inter alia,* to trace the proceeds of the Appleton House to the El Monte House. Shortly before trial, in March 2004, Guastella quitclaimed the remaining 50% interest in the El Monte House to her Parents in a futile effort to obtain dismissal from the State Court Litigation. Guastella continued to reside in the El Monte House with her Parents, paid substantially all of the mortgage payments, and also paid the property taxes.

After a trial, the State Court ruled, in the Tentative Decision, that it would set aside both conveyances of the El Monte House, impose a constructive trust on the El Monte House, issue an injunction against any transfer of the El Monte House, and hold the Parents liable for monetary damages in the amount of $495,000. The State Court specifically found that the Parents "entered into a conspiracy with [Guastella] to conceal the proceeds that could be traced back to their fraudulent sale of the [Appleton House] by transferring the $158,444.68 to [Guastella]." The State Court characterized Guastella's purchase of the El Monte House as "a sham transaction to conceal the funds."

The part of the Tentative Decision most pertinent to this appeal is the State Court's discussion of Guastella's conduct and why it did not also hold Guastella liable for monetary damages:

The Court finds that *there was sufficient evidence produced to make defendant Teresa Guastella jointly and severally liable for the tort of fraud committed by her parents,* defendants Angelo R. Guastella and Rose Ann Guastella. Under the law in California, a person can be civilly liable for damages resulting from a conspiracy even though he or she was not a member of the conspiracy at the time of its inception.

However, in *reviewing the 5th Amended Complaint, it does not appear that the plaintiffs are seeking to hold defendant Teresa Guastella jointly and severally liable for the fraud of her parents, so the Court declines to do so.* (Emphasis added.)

The Hamptons filed a Request for Modification of the Tentative Decision ("Modification Request") in which they asked the State Court to hold Guastella jointly and severally liable with her Parents for the full amount of the monetary damages. They argued that Guastella's liability had been properly pled in the Fifth Amended Complaint. Guastella opposed the Modification Request. She countered that joint and several liability had not been pled against her. Guastella asserted that she should only be held liable for the constructive trust remedy. Moreover, Guastella argued that she had prepared her defense based on the belief that she was not being sued for monetary damages.

*The Bankruptcy Proceeding.*

On August 4, 2004, before the State Court could hold a hearing on the Modification Request, or enter any further orders, Guastella filed her bankruptcy petition under chapter 13. In a subsequent pleading (the "Motion for Reconsideration"),[3] Guastella explained, "Teresa commenced this bankruptcy case … in order to protect herself against the possibility of an adverse ruling by the state court." Guastella is represented in this bankruptcy case by the same attorney who represent-

---

**3.** See the Notice of Motion & Motion for a New Hearing and/or for Reconsideration of This Court's Order of January 27, 2005 Dismissing Debtor's Chapter 13 Case Pursuant to

11 U.S.C. § 109(e); Memorandum of Points & Authorities; Declaration of Teresa Guastella filed on February 4, 2005.

ed the Parents in the State Court Litigation.[4]

On August 18, 2004, Guastella filed her original bankruptcy schedules. The schedules listed secured claims in the amount of $350,000 and unsecured claims of $20,984. On the face of the schedules, Guastella appeared to be eligible for chapter 13 relief. However, Guastella listed the Hamptons as holders of an unliquidated unsecured nonpriority claim in the amount of $0.00. In a subsequent declaration filed in support of the Motion for Reconsideration, Guastella explained how she estimated the Hamptons' claim:

> I scheduled my 'debt' to the Hamptons as $0.00 based on the decision of the state court ... and because I truly believed the state court would affirm its tentative decision.
>
> ...
>
> I was very much surprised by the state court's change of mind in modifying its tentative decision to impose monetary liability against me.

The statement of financial affairs disclosed the State Court Litigation as "pending." The real property schedule also disclosed the Tentative Decision and the "pending" State Court Litigation in pertinent part as follows:

> Debtor was named as a defendant in a *law suit currently pending* in the Superior Court of CA, for County of Ventura, SC027078, and the court in said case recently issued a tentative decision a) vacating Debtor's two conveyances to her parents, and b) *imposing a constructive trust against the property* .... (Emphasis added.)

On August 26, 2004, the State Court modified its Tentative Decision and on September 24, 2004, a judgment was entered against Guastella. Guastella contends that the State Court acted in violation of the automatic stay, but that issue was not raised in this appeal and is not relevant to our ruling.

On October 18, 2004, the Hamptons filed an Objection to Confirmation of Chapter 13 Plan and Request for Judicial Notice (the "Objection to Confirmation"). Based on their claim against Guastella in the State Court Litigation, the Hamptons argued that Guastella was not eligible for chapter 13 relief under § 109(e). They also argued that Guastella's schedules were "knowingly false." In response to the Objection to Confirmation, Guastella looked to the record from the State Court. Based on the Tentative Decision, Guastella argued, that she "was determined to be not liable [to the Hamptons] prior to filing."

The Hamptons also objected to the fact that Guastella was continuing to make post-petition payments on the El Monte mortgage, even after having conveyed the House to her Parents. Guastella defended the mortgage payments, arguing that she still had some interest in the El Monte House. In a supplemental response to the Objection to Confirmation, Guastella used the Tentative Decision and claimed ownership of the El Monte House to explain the mortgage payments:

> There are a number of valid reasons why Teresa would continue making the mortgage payments to Chase despite having transferred her interest in El Monte to her parents.... [P]ursuant to the state court judgment, which the

---

4. The Supplemental Declaration of Ann Michelle McKinley, Esq. filed in support of the Modification Request refers to a fee application filed by Mr. Garber in the Parents' chapter 13 case no. SV–01–20479–KL. Time entries in that fee application state that he rendered legal services in the State Court litigation.

Hamptons claim is valid, *Teresa remains the owner of El Monte; the state court invalidated both of Teresa's quitclaim transfers to her parents, leaving her as the sole owner of El Monte.* (Emphasis added.)

The Objection to Confirmation was argued on January 24, 2005. At the hearing, the bankruptcy court found that Guastella was not eligible for chapter 13 relief and *sua sponte* dismissed the bankruptcy case. Based on the State Court record, the court stated:

I don't think the Debtor's eligible because I think the amount [of the Hamptons' claim] is ascertainable .... [The State Court] said in effect that it found a problem with her conduct.... [U]nless you come back and you're able to show me somehow that that was the only opportunity and that the tentative decision somehow makes her not liable for the debt ever, the question on eligibility is not liability. It's whether or not it's contingent, whether or not the amount is ascertainable.

Guastella timely filed the Motion for Reconsideration. The court conducted another hearing on February 28, 2005, but denied Guastella's request to vacate the dismissal order. The court clarified its decision with respect to the issue of chapter 13 eligibility as follows:

*I think the tentative decision did a couple of things. It gave an amount for the claim, and it made a decision with regard to liability at that stage in time.* But on the date that the bankruptcy was filed, while everyone could look to the tentative decision for the amount of the claim—perhaps subject to dispute, but *there had been a hearing—that the issue of whether or not Ms. Guastella would be liable for that was still at issue,* was at issue on the date the case was filed, so that when I go to the next question

about, well, if it was at issue, the liability was in doubt, does this Debtor meet the eligibility requirement to drop this debt or not drop this debt on the eligibility requirement. (Emphasis added.)

The court addressed the issue of Guastella's good faith as follows:

I think that the liquidation—the amount of the claim was readily ascertainable. The question then, under this scenario, can I find that the Debtor could ignore that claim, the fact that a claim was presently being made on the date of bankruptcy against her personally, could the Debtor ignore that in good faith and list it as zero based on the tentative ruling in the State Court, and I don't think the Debtor could. And I don't think the Debtor could because the claim was clearly in dispute....

Guastella timely filed a notice of appeal.

## III. ISSUES PRESENTED

A. Whether Guastella was eligible for chapter 13 relief at the time she filed her bankruptcy petition.

B. Whether the bankruptcy court properly looked beyond the schedules to determine that Guastella was not eligible for chapter 13 relief.

C. Whether the court was required to make a finding that Guastella intentionally misrepresented her debts to create the appearance of eligibility.

D. Whether the State Court's Tentative Decision created a "safe harbor" upon which Guastella could rely in preparing her schedules.

## IV. STANDARD OF REVIEW

■ The appellate court reviews factual findings of the bankruptcy court for clear error and its conclusions of law *de novo. See Anastas v. American Savings*

*Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir.1996). Findings of fact by the bankruptcy court "shall not be set aside on appeal unless clearly erroneous." Fed. R. Bankr.P. 8013; *Johnston v. Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir.1995). Whether a debt is liquidated involves an interpretation of the Bankruptcy Code and is reviewed *de novo. See FDIC v. Wenberg (In re Wenberg)*, 94 B.R. 631, 633 (9th Cir.BAP1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990). The liquidated amount of a claim to be included in the eligibility calculation is a finding of fact reviewable for clear error. *Loya v. Rapp (In re Loya)*, 123 B.R. 338, 340 (9th Cir. BAP 1991). The court's determination of good faith is also a finding of fact reviewable for clear error. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir.BAP1997). We review orders of dismissal for abuse of discretion. *Sievers v. Green (In re Green)*, 64 B.R. 530 (9th Cir.BAP1986).

## V. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). The jurisdiction of the Bankruptcy Appellate Panel is based on 28 U.S.C. § 158(b)(1).

## VI. DISCUSSION

*A. The Hamptons Held a "Claim" at the Commencement of the Case Even Though the State Court Litigation Was Not Concluded.*

We begin by confirming that the Hamptons had a "claim" against Guastella, and their claim was a "debt" within the meaning of the Bankruptcy Code at the commencement of this case. Guastella acknowledged the Hamptons' claim by listing them in her schedules as unsecured creditors, yet she argues that she owed nothing to the Hamptons when she filed her petition.

A "creditor" is defined in § 101(10) of the Bankruptcy Code as:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]

A "claim" is defined in § 101(5) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

The term "debt" is defined in § 101(12) as "liability on a claim." The terms "debt" and "claim" are used interchangeably by both Congress and the courts in the context of chapter 13 eligibility. The legislative history of § 109(e) indicates that "[t]he terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977), *as reprinted in* 1978 U.S.Code Cong. & Admin. News at 6267.

The term "claim," and thus the existence of a "debt," is broadly construed. *See Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928 (9th Cir.1993). Federal law determines when a claim arises for purposes of a bankruptcy proceeding. "[A] claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." *Cool Fuel, Inc. v. Bd. of Equalization of the State of Cal. (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir.2000) (citations omitted).

Guastella acknowledged in response to the Objection to Confirmation that she still had an interest in the El Monte House, subject to a constructive trust; the State Court, per the Tentative Decision, intended to invalidate the con-

veyances to her Parents. Pursuant to § 102(2), the term "claim against the debtor" includes a "claim against property of the debtor." The Hamptons therefore had a claim against Guastella by virtue of the relief against the El Monte House identified in the Tentative Decision.

Similarly, the Hamptons had a claim based on the finding of damage and the conspiracy discussed in the Tentative Decision. The Hamptons' claim existed even before they commenced the State Court litigation and reduced their claim to various causes of action. The Tentative Decision was just that, tentative, and it did not extinguish the Hamptons' claim. The Hamptons had a "claim," and that claim was a "debt" within the meaning of the Bankruptcy Code, even though the State Court had not yet reduced the claim to a final judgment when Guastella filed her petition.

*B. The Hamptons' Claim Was Liquidated and Exceeded the Statutory Limit for Chapter 13 Eligibility.*

Under § 109(e), applicable at the commencement of this bankruptcy case, a debtor is eligible for chapter 13 relief if the sum of his or her noncontingent, liquidated, unsecured debts does not exceed the statutory limit of $307,675. The determination of eligibility under § 109(e) must be based on pre-petition events.[5] *Scovis v. Henrichsen (In re Scovis),* 249 F.3d 975, 982 (9th Cir.2001). Guastella does not contend in this appeal that the Hamptons' claim for money damages in the amount of $495,000 is contingent or secured, and she does not dispute that it exceeds the statutory limit for chap-

ter 13 eligibility. Guastella listed the claim in her bankruptcy schedules as "disputed," but disputed claims are not excluded from the eligibility calculation. *Nicholes v. Johnny Appleseed of Washington (In re Nicholes),* 184 B.R. 82, 90–91 (9th Cir.BAP1995) (holding that "the fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated"). The resulting issue, therefore, is whether the Hamptons' claim constituted a "liquidated debt" at the commencement of the bankruptcy case.

In the Ninth Circuit, a debt is liquidated for purposes of calculating chapter 13 eligibility if the amount of the debt is readily determinable. *Slack v. Wilshire Ins. Co. (In re Slack),* 187 F.3d 1070, 1073–75 (9th Cir.1999) (holding that "a debt is liquidated if the amount is readily ascertainable, *notwithstanding the fact that the question of liability has not been finally decided*" (emphasis added)).

The *Slack* court follows our decision in *Wenberg,* 94 B.R. 631 where we held "[t]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Slack,* 187 F.3d at 1073–74, (quoting *In re Wenberg,* 94 B.R. at 634).

Guastella argues that at the time she filed her petition, the Hamptons' claim was not a "debt" for eligibility purposes because the State Court declined to hold her liable for monetary damages in its

---

5. The record confirms that the bankruptcy court based its decision on the pre-petition record from the State Court:

"I do not think subsequent events matter. I think it's immaterial what happened subse-

quently in this case. On the date of bankruptcy, the amount was readily ascertainable ...."

Tentative Decision, and no judgment had been entered against her. The argument misstates the applicable rule and it mischaracterizes the Tentative Decision. The Tentative Decision quantified the Hamptons' damages in an amount certain. There is nothing in the Tentative Decision that exonerates Guastella from being liable for those damages. Indeed, the bankruptcy court correctly observed that the Tentative Decision was not the final word on Guastella's liability.

The bankruptcy court applied the correct test. It considered the record from the State Court and found from the Tentative Decision that the Hamptons had a "readily ascertainable" claim against Guastella in an amount that made her ineligible for chapter 13 relief. The State Court made a finding that Guastella conspired with her Parents to conceal the proceeds from the Appleton House. It also noted that under California law, Guastella could be civilly liable for damages resulting from the conspiracy even though she was not a member of the conspiracy at the time of its inception. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).[6]

The "extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability" (*In re Slack,* 187 F.3d at 1073–74) had already taken place in the State Court. The decision to limit Guastella's liability in the Tentative Decision was based on a procedural issue, not a substantive one. All that stood between Guastella and monetary liability was an adverse ruling on the Modification Request. Guastella opposed the Modification Request on the merits, but then filed this bankruptcy petition in an effort to prevent the State Court from ruling on the issue. The bankruptcy court properly determined that the Hamptons' claim was "liquidated" at the commencement of this case and, based thereon, that Guastella was not eligible for chapter 13 relief.

*C. The Bankruptcy Court Properly Decided that Guastella Did not Prepare her Schedules in Good Faith.*

■ The bankruptcy court has the inherent power to *sua sponte* dismiss a case if the debtor is not eligible for relief. *Hammers v. IRS (Matter of Hammers),* 988 F.2d 32, 34–35 (5th Cir.1993).

■ Guastella contends that the bankruptcy court should have determined the eligibility issue based solely on the debts as listed in her schedules. The Ninth Circuit in *Scovis* held, "eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." 249 F.3d at 982.

The *Scovis* court followed the Sixth Circuit's decision in *In re Pearson,* 773 F.2d 751 (6th Cir.1985). *Pearson* endorsed an eligibility analysis in which the bankruptcy court relies primarily on the debtor's schedules in determining the amount of "eligible" debt, not on an amount of debt that is established after a hearing on the merits. The *Pearson* court expressed concern about any approach in which "exten-

---

**6.** The court in *Applied Equip. Corp.* explained the conspiracy doctrine,

> Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil

> conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

> 7 Cal.4th at 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (citations omitted).

sive inquiries" and evidentiary hearings "dominate the proceedings." *Id.* at 757. However, the court also recognized it would be inappropriate "to spell out detailed procedures by which the question of Chapter 13 eligibility may be resolved including what kinds of proof would be minimally sufficient and what burdens of proof must be met by one side or the other." *Id.* at 756.

What distinguishes this case from the *Scovis* rule is the Hamptons' Objection to Confirmation based on eligibility and lack of good faith. We noted the significance of a good faith objection in *Quintana v. IRS (In re Quintana)*, 107 B.R. 234, (9th Cir. BAP 1989), *aff'd*, 915 F.2d 513 (9th Cir. 1990).

> The debtors' schedules should be the starting point to a determination of the debtor's aggregate debts.... However, the schedules are not dispositive. If the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors. A bankruptcy court should "look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest."

107 B.R. at 238–39 n. 6 (citing *In re Williams Land Co.*, 91 B.R. 923, 927 (Bankr.D.Or.1988)).

Here, Guastella filed her schedules and her chapter 13 plan; the Hamptons objected to confirmation of the plan on the grounds that Guastella was not eligible for chapter 13 relief and that the schedules were "knowingly false." Guastella does not contend that the Objection to Confirmation was filed in bad faith. Faced with what appeared to be a good faith objection from the Hamptons, it was properly within the discretion of the bankruptcy court to make a limited inquiry outside of the schedules to determine first whether Guastella estimated her debts in good faith and, if not, whether Guastella was in fact eligible for chapter 13 relief.

The bankruptcy judge properly made the initial "good faith" determination based on a summary review of the State Court record and applicable law, without engaging in an extensive inquiry and without allowing it to dominate the proceedings. The record revealed that Guastella scheduled the Hamptons' claim at $0.00 even after the State Court found that she had conspired with her Parents and had already decided to impose a constructive trust against her interest in the El Monte House to pay the Parents' debt to the Hamptons. Guastella prepared her bankruptcy schedules with the advice and assistance of an attorney, who was aware of the Tentative Decision, had participated in the "still pending" State Court Litigation and either knew, or should have known, what the State Court's decision meant with regard to Guastella's eligibility. Based thereon, the bankruptcy court determined that Guastella could not have reasonably believed in good faith that the Hamptons did not have a substantial claim within the meaning of the Bankruptcy Code. Having made that determination, the bankruptcy court did not err in looking outside the schedules to determine the amount of that claim.

### D. The Bankruptcy Court Was Not Required to Make a Finding that Guastella Acted with Intent to Misrepresent Her Debts.

Guastella contends that the bankruptcy court erred by not considering the "totality of the circumstances," i.e., by not considering her "sincerity in preparing her schedules and her subjective state of mind." Guastella argues that the bankruptcy court was required to consider all militating factors—both objective and subjective—and make a finding of bad faith as the term is

defined to mean "dishonesty of belief or purpose." BLACK'S LAW DICTIONARY 149 (8th Ed.2004).[7]

Ironically, Guastella's argument here, calling for a comprehensive "state of mind" inquiry, contradicts her earlier argument, and the principle stated in *Pearson* that her eligibility should be determined without an extensive inquiry. *Matter of Pearson*, 773 F.2d at 757. Guastella's argument is not persuasive.

Congress did not specifically define "good faith" in the Bankruptcy Code, nor does the Code suggest a procedure for making that determination. Guastella asserts that the proper analysis is explicated in *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir.1982). *Goeb* involved the confirmation of a chapter 13 plan, which proposed to pay almost nothing to unsecured creditors, and the need for an inquiry to determine whether the plan was filed in "good faith" as required by § 1325(a)(3). Notably under § 1325(a)(3), the debtor has the burden of proving good faith. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002) (Klein, J., concurring). Even the *Goeb* court declined to prescribe a list of "good faith" factors, but recommended a case-by-case analysis. *In re Goeb*, 675 F.2d at 1390.[8]

Here, the court did consider evidence of Guastella's state of mind, and based thereon, the court did make a finding that Guastella could not have prepared her schedules in good faith. Guastella filed declarations in response to the Objection to Confirmation and in support of the Motion for Reconsideration regarding (1) her interpretation of the Tentative Decision, and (2) her belief that the "state court would affirm its tentative decision." But the record includes other statements by Guastella which reveal that she fully understood her potential liability to the Hamptons. Guastella disclosed the State Court Litigation as "pending" in her schedules. She acknowledged that she filed the bankruptcy petition "in order to protect herself against the possibility of an adverse ruling by the state court." In ruling on Guastella's Motion for Reconsideration, the bankruptcy judge responded to Guastella's professed interpretation of the Tentative Decision:

> The question then, *under this scenario*, can I find that the Debtor could ignore that claim, ... could the Debtor ignore that in good faith and list it as zero based on the tentative ruling in the State Court, and I don't think the Debtor could. And I don't think the Debtor could because the claim was clearly in dispute. (Emphasis added.)

The court's words "under this scenario" indicate that the judge did consider the circumstances and the record before her. The court did not err in rejecting Guastella's "good faith state of mind" argument because (1) Guastella's interpretation of the Tentative Decision was wrong as a matter of law, and (2) Guastella's own statements in the record are conflicting. On the one hand, Guastella professes to a

---

7. The issue is summarized in Guastella's appellate brief as follows:

> In order to dismiss Appellant's bankruptcy case, the bankruptcy court was required to make a finding that a) Appellant lied about the amount of debt she owed to Appellees or b) that she intentionally and in bad faith misrepresented the amount of debt to the Appellees for the purpose of manufacturing

jurisdiction where none otherwise might exist.

8. Compare the Ninth Circuit BAP's decision in *Fid. & Cas. Co. of New York v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988) (adopting an 11–point test) to *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999) (setting forth a four-step "totality of the circumstances" test).

reasonable subjective belief that her liability to the Hamptons had been somehow irrevocably extinguished by the Tentative Decision, such that it was appropriate to schedule their claim at $0.00. On the other hand, she understood that the State Court Litigation was not yet final and that she needed to file bankruptcy before the hearing on the Modification Request to protect herself against the possibility of an adverse ruling.

Guastella asks this panel to redefine and restrict the chapter 13 eligibility rule which was explicitly stated in *Scovis* as follows:

> [E]ligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.

*In re Scovis,* 249 F.3d at 982.

■■■ The phrase "checking only to see if the schedules were made in good faith" does not mandate that the court make findings of "bad faith." Neither does it require that a debtor intentionally misrepresent her debts to create the appearance of eligibility before there can be an absence of good faith.

■■■ Bankruptcy courts have consistently recognized that, as a matter of public policy, the issue of chapter 13 eligibility should be determined quickly. The *Pearson* court addressed the policy considerations by comparing chapter 13 eligibility with the issue of subject matter jurisdiction in federal diversity cases.

> This threshold eligibility determination for Chapter 13 is in many respects like the threshold subject matter jurisdiction determination in diversity cases where the $10,000 minimum amount in controversy is challenged. Clearly in both sit-

uations Congress intended to limit the class of persons who might avail themselves of access to the federal forum. Just as clearly, *it is necessary that the procedures for determining initial jurisdiction cannot be allowed to dominate the proceedings themselves nor to delay them unduly.* As important as this may be in the ordinary diversity litigation in a district court, it is even more important with respect to Chapter 13 proceedings for time is of the essence. The resources of the debtor are almost by definition limited and the means of determining eligibility must be efficient and inexpensive. To allow an extensive inquiry in each case would do much toward defeating the very object of the statute.

*In re Pearson,* 773 F.2d at 757 (emphasis added).

*Pearson's* "diversity" analogy adds another dimension to our decision because diversity jurisdiction, like chapter 13 eligibility, is determined by the "amount in controversy." Discussing the test for diversity jurisdiction, the U.S. Supreme Court in *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) recognized that the "amount in controversy" cannot always be ascertained. It defined a diversity test very similar to the *Scovis* test used in chapter 13 cases stating, "the amount claimed in good faith by the plaintiff controls *unless it appears to a legal certainty* that the claim is for less than the jurisdictional amount or the amount claimed is merely colorable." *In re Pearson,* 773 F.2d at 757 (citing *St. Paul Mercury,* 303 U.S. at 288–90, 58 S.Ct. 586 [9]) (emphasis added).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different

---

9. The Supreme Court stated in *St. Paul Mercury:*

The *Pearson* court essentially adopted the "diversity jurisdiction" test as a "workable and fair" approach to the question of chapter 13 eligibility:

> We recognize that the diversity jurisdiction standard is not controlling here. The good sense of that approach, however, commends itself to our consideration for the same basic problems exist here and, it seems to us, the same basic approach is both workable and fair.

*In re Pearson,* 773 F.2d at 757.

Applying this principle to the case before us, it is not our intention here to rewrite the eligibility test as stated in *Scovis.* However, we do conclude that the "good faith" test applicable to the preparation of chapter 13 bankruptcy schedules is mitigated by, and must be balanced against, the "legal certainty" factor recognized in *St. Paul Mercury.* In other words, an actual "good faith" inquiry was unnecessary if it appeared to a legal certainty from the face of Guastella's schedules, and the record before the court, that the Hamptons' claim was not $0.00 as stated on the schedules.

We are reminded here of the timeless axiom, "if it's too good to be true, it probably isn't." Guastella's schedules, taken as a whole, were so paradoxical, and her estimation of the Hamptons' claim, based on the "pending" State Court Litigation, was so lacking in "legal certainty" that the court was well within its discretion to summarily reject Guastella's declarations of belief and sincerity. We hold that the bankruptcy court was not required to make a finding that Guastella intentionally misrepresented her debts to create chapter 13 eligibility. The bankruptcy court did not err in finding that Guastella failed to schedule the Hamptons' claim in good faith.

*E. The Tentative Decision Was Not a "Safe Harbor" for the Preparation of the Bankruptcy Schedules.*

Guastella argues that she prepared her bankruptcy schedules in reasonable reliance on the Tentative Decision, which declined to impose monetary damages. She cites *In re Slack* for the proposition that a state court's tentative decision adequately establishes liability for purposes of preparing bankruptcy schedules. We reject the contention that *Slack* creates a good faith "safe harbor" based on tentative rulings from another court for three reasons.

First, it is well established that chapter 13 eligibility and the "good faith" test must be determined on a case-by-case basis. A tentative decision from another court is one factor that can be considered in each case. We find no reason to restrict the flexibility of that rule.

Second, Guastella mischaracterizes the *Slack* decision. In *Slack,* the State court had issued a tentative decision that the debtor was liable for an amount which greatly exceeded the chapter 13 eligibility limit. The parties subsequently stipulated to a lesser *amount* of damages in both the

rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. 303 U.S. at 288–90, 58 S.Ct. 586 (internal footnotes omitted).

state and bankruptcy courts, but the issue of *liability* remained in dispute, and the stipulated amount still exceeded the chapter 13 eligibility limit. The *Slack* court determined that the stipulation adequately liquidated the plaintiff's claim to show the lack of eligibility, even though the debtor's liability was still disputed. The *Slack* court did not hold that a state court's tentative decision in "pending" litigation could be relied upon to establish the absence of a claim.

Third, and finally, the record contradicts Guastella's contention that she reasonably relied on the Tentative Decision. She scheduled the State Court Litigation as "pending"; she knew that the issue of liability was unresolved and still before the State Court; she opposed the Modification Request on the merits but did not wait to see how the State Court might rule on the liability issue; she filed the bankruptcy petition knowing that she needed to protect herself from the possibility of an adverse ruling; and she retained bankruptcy counsel who was familiar with the State Court Litigation and who understood, or should have understood, the applicable law regarding liquidation of the Hamptons' claim.

## VII. CONCLUSION

Guastella was not eligible for chapter 13 relief because the Hamptons' liquidated claim exceeded the statutory limit under § 109(e). The bankruptcy court properly determined that Guastella's schedules were not prepared in good faith and properly looked beyond the schedules, to the State Court record, to determine the eligibility issue. The bankruptcy court was not required to make a finding that Guastella intentionally misrepresented the Hamptons' claim to create the appearance of eligibility. Finally, the State Court's Tentative Decision was not a "safe harbor" upon which Guastella could reasonably rely in the preparation of her schedules. Accordingly, the decision of the bankruptcy court is AFFIRMED.